**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

MATTHEW TUTTLE

    Plaintiff,

v.

MMR CONSTRUCTORS, INC.

    Defendant.

§
§
§
§  CIVIL ACTION NO. 7:26-cv-00087
§
§
§  **JURY TRIAL DEMANDED**
§
§
§

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Matthew Tuttle ("Plaintiff") files this Original Complaint against Defendant MMR Constructors, Inc. ("Defendant"), and alleges as follows:

### I.    INTRODUCTION

1.    This is an action for damages and other legal and equitable relief for retaliation and associational race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.

2.    This action arises from Defendant's retaliation and associational race discrimination against a Caucasian employee who engaged in protected activity by reporting his supervisor's repeated use of an egregious racial slur (the "N-word") to describe Plaintiff's multiracial daughter and Black employees that the supervisor had "gotten rid of." Days after Plaintiff submitted a formal written complaint to Defendant's Human Resources representative regarding the supervisor's use of the slur, the supervisor demoted him to a non-managerial position. A few weeks later, the supervisor terminated his employment.

### II.    PARTIES

PLAINTIFF'S ORIGINAL COMPLAINT                                                                                   1

3.      Plaintiff is an individual who resides in Andrews, Texas, and was employed by Defendant at all relevant times.

4.      Defendant is a foreign corporation with its principal place of business at 15961 Airline Highway, Baton Rouge, Louisiana 70817. Defendant is in the business of providing electrical, instrumentation, and electrical distribution systems. Defendant operates in Texas and has local operations at 3698 South Fulton Avenue, Odessa, Texas 79766. Defendant may be served with process through its registered agent for service, Universal Registered Agents, Inc., 7533 County Road 1127, Godley, Texas 76044.

### III.    JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.

6.      This Court has jurisdiction over this action pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practice occurred in this district. Venue is proper in this district under 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim occurred in this district, and the Defendant resides in this District.

### IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.      In late June 2025, Defendant demoted Plaintiff to a non-managerial position.

8.      On July 16, 2025, Defendant terminated Plaintiff's employment.

9.      On December 4, 2025, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

10.     On February 25, 2026, the EEOC issued, and Plaintiff received, a Notice of Right to Sue.

11. This lawsuit has been filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

12. All administrative prerequisites to filing suit have been satisfied.

### V.    FACTUAL ALLEGATIONS

13. Plaintiff is a 37-year-old Caucasian male.

14. In October 2024, Defendant hired Plaintiff to work as an Overhead Line Manager.

15. As an Overhead Line Manager, Plaintiff worked under and reported to Defendant's Warehouse Supervisor, Sarah Alley ("Alley").

16. At all relevant times, Defendant acted through its agent and employee, Alley, with whom Defendant vested authority over the terms and conditions of Plaintiff's employment.

17. Prior to June 18, 2025, Defendant had hired 6–7 temporary workers for a project. In the days leading up to June 18, 2025, Alley terminated several Black temporary workers.

18. On or about June 18, 2025, Plaintiff entered Alley's office and overheard Alley repeatedly stating the full six-letter racial slur commonly known as the "N-word" while laughing and telling another person in the office that she had "gotten rid of" one of the temporary workers.

19. When Alley noticed Plaintiff had entered the room, she laughed and stated, "Sorry, I know you have a Black daughter." Alley then repeated the full six-letter "N-word" several more times while laughing.

20. Plaintiff has a mixed-race daughter and has close familial associations with Black individuals.

21. Alley's statement directly referenced Plaintiff's familial association with his daughter, whom Alley classified as "Black," and so it appeared to Plaintiff that Alley intended to demean him through that association with her use of the "N-word" to describe his daughter.

22.     Based on Alley's repeated use of a vulgar racial slur and the context in which it was used—*e.g.*, her reference to Plaintiff's "Black" daughter in a demeaning manner and to describe a former employee that Alley had "gotten rid of"—Plaintiff reasonably and in good faith believed that Alley had engaged in conduct constituting unlawful discrimination because of race.

23.     Shortly after the June 18, 2025, incident, Plaintiff sought to report Alley's conduct to Defendant's Human Resources. Defendant had not provided Plaintiff with any training specific to Defendant's anti-discrimination or harassment policies or its reporting procedures at the time of Plaintiff's hire or at any time during his employment. From the local office, Plaintiff obtained Defendant's "Investigation Employee Statement" form and began to fill it out while at work.

24.     A coworker saw Plaintiff fill out the form and informed Alley's husband, who was also employed by Defendant, of Plaintiff's forthcoming report. Alley's husband immediately confronted Plaintiff and threatened him with physical harm, shouting, "I'm going to whip your f*cking *ss if you talk about my wife."

25.     Plaintiff completed his written "Investigation Employee Statement," dated June 23, 2025, and disclosed that Alley repeatedly used the "N-word" and referenced Plaintiff's Black daughter. Plaintiff submitted the form to the person he believed served as Defendant's Human Resources representative in the local Odessa office, Emily Rodriguez. Ms. Rodriguez identified herself to Plaintiff as being responsible for Human Resources functions in the Odessa office. Other employees referred to Ms. Rodriguez by the nickname "HR Lady."

26.     When Plaintiff submitted his report to Ms. Rodriguez, he expressed concern that Alley might retaliate against him and asked whether anything could be done to prevent it. Ms. Rodriguez informed Plaintiff that she was uncertain if anything could be done to prevent retaliation, given Alley's reputation for mistreating employees whom she did not like.

PLAINTIFF'S ORIGINAL COMPLAINT                                                                            4

27.     Within days of Plaintiff submitting his report to Ms. Rodriguez regarding Alley's use of racial slurs, Plaintiff was informed that he had been reassigned to the powerline crew because a member of the crew sustained an injury and Defendant needed a replacement for that employee.

28.     Upon information and belief, Alley caused Plaintiff's demotion. Alley had a reputation for trying to "break" employees by belittling them and/or assigning them labor-intensive jobs to force them to resign.

29.     At the time of Plaintiff's demotion, Plaintiff had a managerial role and was studying to become certified for a role in Defendant's safety division. Alley was aware of Plaintiff's ambitions. Other experienced employees below Plaintiff's level were available to replace the injured powerline crew member. There was no plausible basis for Plaintiff to have been assigned to the powerline crew other than in retaliation for Plaintiff's report to Human Resources.

30.     On or about July 10, 2025, Plaintiff spoke with Alley about some work-related receipts. During this conversation, Alley told Plaintiff, "You don't work for me, you work for them now," and instructed him to "stay out there with the powerline crew."

31.     On Friday, July 11, 2025, Plaintiff and the powerline crew completed the work they had been doing. Unsure where to report next, Plaintiff contacted the powerline crew foreman. However, the crew foreman was on vacation and did not respond.

32.     On Monday, July 14, 2025, Plaintiff contacted Alley to discuss his next assignment, but she did not return his call. The crew foreman had not yet returned from vacation.

33.     Plaintiff reported to the Odessa office on Tuesday, July 15, 2025, because he was unsure of what he was supposed to do next. Plaintiff saw Alley and told her that he had tried to contact her the day prior, to which she replied that she was "busy" and did not speak with him.

34.    On Wednesday, July 16, 2025, Plaintiff reported to the Odessa office again, hoping to learn of his next job placement. Upon seeing him, Alley terminated Plaintiff's employment, claiming that Plaintiff was a "no call no show" on Monday, July 14, 2025.

35.    Plaintiff asked Alley to explain why she had not terminated his employment when she saw him on Tuesday, if he was truly being terminated for his alleged Monday "no call no show." Alley did not answer the question and told Plaintiff to find a ride home.

36.    Prior to his termination, Plaintiff had not received any disciplinary write-ups.

37.    Upon information and belief, Alley, still angry with Plaintiff over his report regarding her use of racial slurs, retaliated against Plaintiff and fabricated a reason to terminate his employment.

38.    Prior to his termination, neither Ms. Rodriguez nor any Human Resources representative from Defendant's corporate office contacted Plaintiff to discuss or investigate the report he submitted on June 23, 2025.

39.    In a communication to the EEOC, Defendant claimed it terminated the employment of Alley and her husband on or about August 28, 2025, but did not provide a reason for their termination.

40.    Defendant later disclosed to Plaintiff that the Alleys were eligible for rehire, stating, "in the event that either individual returns to the company in any capacity," Plaintiff would not report to them.

41.    Defendant's conduct suggests that it either (a) lacked awareness of Plaintiff's June 23, 2025 report as of August 28, 2025 and terminated the Alleys for unrelated reasons, demonstrating a failure in Defendant's Human Resources reporting processes, or (b) with awareness of Plaintiff's claims, did not view the Alleys' conduct toward Plaintiff as misconduct

warranting disqualification from future employment with Defendant. In either event, Defendant's action demonstrates that if Defendant has anti-discrimination policies, they are illusory in practice.

### VI.    COUNT I – Violation of Title VII and 42 U.S.C. § 1981 – Retaliation

42.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

43.    Plaintiff is an employee within the meaning of 42 U.S.C § 2000e(f).

44.    Defendant is an employer within the meaning of 42 U.S.C §2000e(b).

45.    Plaintiff engaged in protected activity by reporting Alley's use of racial slurs to Defendant's Human Resources representative on June 23, 2025.

46.    Defendant subjected Plaintiff to an adverse employment action by demoting Plaintiff to the powerline crew.

47.    Defendant subjected Plaintiff to an adverse employment action by terminating Plaintiff's employment.

48.    The temporal connection between Plaintiff's protected activity and his demotion and termination suggests that Plaintiff's demotion and termination were because of his protected activity.

49.    Defendant's stated reason for Plaintiff's termination, an alleged "no call, no show," was a pretext for unlawful retaliation.

50.    As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered and continues to suffer substantial losses, including loss of earnings, benefits, emotional distress, and other damages.

51.    Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

### VII.    COUNT II – Violation of Title VII and 42 U.S.C. § 1981 – Associational Race Discrimination

52.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

53.    Plaintiff is an employee within the meaning of 42 U.S.C § 2000e(f).

54.    Defendant is an employer within the meaning of 42 U.S.C §2000e(b).

55.    The Fifth Circuit recognizes associational race discrimination claims under Title VII and 42 U.S.C. §1981. *See Floyd v. Amite Cty. Sch. Dist.*, 581 F.3d 244, 249 (5th Cir. 2009).

56.    Plaintiff, a Caucasian male, is the father of a biracial child.

57.    Defendant perceived Plaintiff's child as Black.

58.    Defendant displayed explicit racial animus towards Black persons and subjected Plaintiff to offensive racial slurs because of his association with his daughter.

59.    Defendant subjected Plaintiff to an adverse employment action by demoting Plaintiff to the powerline crew.

60.    Defendant subjected Plaintiff to an adverse employment action by terminating Plaintiff's employment.

61.    The temporal connection between Defendant's display of racial animus towards Black persons, use of racial slurs immediately following a reference to Plaintiff's biracial daughter, and Plaintiff's demotion and termination suggests Defendant demoted Plaintiff and terminated Plaintiff's employment because of his association with his daughter.

62.    Defendant's stated reason for Plaintiff's termination was a pretext for unlawful associational race discrimination.

63.     As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered and continues to suffer substantial losses, including loss of earnings, benefits, emotional distress, and other damages.

64.     Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

## VIII.    JURY DEMAND

65.     Plaintiff demands a trial by jury on all issues so triable.

## IX.    PRAYER FOR RELIEF

66.     **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and award the following relief:

a.  Back pay, front pay, and lost benefits in an amount to be determined at trial;

b.  Compensatory damages for emotional distress and mental anguish;

c.  Punitive damages;

d.  Attorneys' fees and costs;

e.  Pre- and post-judgment interest as permitted by law; and

f.  Such other and further relief as the Court deems just and proper.

Dated: March 11, 2026,                          Respectfully Submitted,

*/s/ Justin V. Sumner*
**Justin V. Sumner**
State Bar No. 24063022
jsumner@sumnerlaw.com

**SUMNER LAW, LLP**
3006 Cole Avenue
Dallas, Texas 75204
Tel: 214-965-9229
Fax: 214-965-9215

**ATTORNEY FOR PLAINTIFF**

PLAINTIFF'S ORIGINAL COMPLAINT                                                                 10